LANDRY, Judge.
These consolidated cases arise from two separate but related accidents which involved three large trucks and which occurred at approximately 2:45 A.M., June 26, 1964, at the intersection of U. S. Highway 61 (the New Orleans-Baton Rouge Airline Highway) and Louisiana Highway 42 (known as Highland Road) in the Parish of East Baton Rouge.
The first accident occurred when an acid laden tractor-tank truck unit owned by Younger Brothers, Inc. (Younger), and being driven at the time by its employee, James DeSoto, was struck by a tractor-trailer combination owned by Gordon’s Transports, Inc. (Gordon’s), and being operated by its employee, Albert E. Smith. The second mishap ensued approximately four minutes thereafter when a truck owned by Red Ball Motor Freight, Inc. (Red Ball), and being driven by its employee, Gerard J. Alombro, ran into the wreckage strewn over the highway as a result of the prior collision.
A particularization of the events attending these mishaps is necessary for a clear understanding of the litigation engendered thereby and the issues presented for determination by the appeals taken herein from the judgments rendered below.
At the intersection in question Airline Highway, a modern four lane thoroughfare, courses in a generally northerly-southerly direction. Its improved surface consists of two strips of pavement each 24 feet in width, one being devoted to northbound and one to southbound vehicles. These two roadways are separated by a neutral ground about 43 feet wide. Intersecting Highway 42 is a paved two lane roadway running easterly and westerly. On both the east and west sides of Airline Highway are shoulders which for all practical purposes may be said to be 12 feet wide. Commencing at the northwest corner of the intersection a third or “right turn lane” runs northerly an undisclosed distance parallel to the right or outside southbound lane to accommodate motorists intending to turn right or westerly from Airline onto Highway 42. Traffic at the crossing is controlled by a “blinking” traffic light which alternately flashes off and on a yellow or caution *783 signal to drivers proceeding both northerly and southerly along Airline Highway and also flashes alternately off and on a red or stop signal to drivers proceeding either easterly or westerly along Highway 42. It is conceded that on the morning of the accident the blinker light was in operation, the weather was clear, the roadway dry and visibility unimpeded excepting only for such darkness as is present on an admittedly clear night. From the intersection south (toward New Orleans) the highway is comparatively straight and level for a distance of approximately 800 feet at which point a long but slight curve continues for an additional 1000 feet but not at such a degree as to impair visibility of the intersection.
Prior to the initial collision the Younger truck and trailer, having an overall length of 53 feet, was being driven by DeSoto (accompanied by a helper-trainee, Allen J. Hernandez) southerly along Airline Highway in the right or outside southbound lane. After making a stop in the hereinbefore mentioned “right turn lane”, DeSoto attempted a “U” turn to reverse his direction and proceed northerly and while in such process was struck by the northbound Gordon transport, the front of the Gordon vehicle striking the right rear portion of Younger’s tank unit, the impact occurring in the left or inside northbound lane. The crash demolished the tractor component of the Gordon assembly. The tractor unit of the Younger vehicle remained upright on its wheels but the tank portion turned over on its side completely blocking both northbound lanes. With the highway in this condition, Red Ball’s northbound rig happened upon the scene approximately four minutes later. The driver of the Red Ball truck observed the wreckage in time, applied his brakes, avoided contact with the Gordon tractor and van, the wreckage of which blocked the left or inside northbound lane, but lightly struck the overturned tank unit of the Younger vehicle, the impact occurring in the right or outside northbound lane.
The aforesaid accidents spawned the following litigation with which we are herein concerned: (1) A suit by Red Ball against Younger, its driver, DeSoto, and its insurer, Continental Casualty Company (Continental), and also against Gordon’s, its driver Smith, and its insurer, Insurance Company of North America (Insurance Company), seeking recovery of damages to Red Ball’s truck and trailer; (2) A demand by Gordon’s against Younger and its insurer, Continental, for damages sustained by its tractor and trailer unit. In this action Insurance Company, insurer of the freight being hauled by Gordon’s, intervened asking reimbursement for freight destroyed or lost in the accident; (3) An action by James DeSoto, driver of the Younger truck, against Gordon’s and its insurer for physical injuries and related medical expense; (4) A claim by Allen J. Hernandez (occupant of the /ounger truck) against Gordon’s and its aforenamed insurer for personal injuries and associated medical expense, and (5) An action by the widow of Gordon’s driver, Albert E. Smith, who was killed in the accident. Mrs. Smith sought damages for herself and two minor children of her deceased husband.
In their respective petitions plaintiffs in the Hernandez, DeSoto and Smith actions requested and were granted jury trials. Likewise Gordon’s prayed for and was granted trial of its cause by jury. Neither Red Ball nor any defendant named in its action requested a jury trial. It was stipulated, therefore, that all issues in Red Ball’s suit be decided by the trial judge upon the same evidence adduced in the trial of the other consolidated cases before the jury.
Upon conclusion of the trial, the jury rendered verdicts rejecting and dismissing the claims of Hernandez and DeSoto but awarding recovery to Mrs. Smith and one child, Kenneth Smith, a retarded minor seventeen years of age and at the same time rejecting the claims of the 19 year old minor, Gregory Smith, a member of the armed forces. In Red Ball’s suit the trial *784 court rendered written reasons for judgment in favor of Red Ball against Younger, DeSoto and Continental but rejecting plaintiff’s demands against Gordon’s, Smith and Insurance Company. It appears, however, in this latter action no formal written judgment was ever signed.
As a result of the judgments below Hernandez and DeSoto have appealed the dismissal and rejection of their respective actions against Gordon’s and Insurance Company. Appeals were also taken by Younger, DeSoto and Continental from the judgments against them in favor of Gordon’s, Insurance Company and Red Ball. The claims of Mrs. Smith and her two minor children were compromised subsequent to trial below and no appeal by any party has been taken in said action. We are in accord with the judgment rendered below and affirm all decisions excepting the appeal in the Red Ball case which is dismissed for procedural reasons hereinafter set forth.
Before considering the contentions of the various appellants we initially find, ex proprio motu, the appeal taken by Red Ball must be dismissed for lack of a final judgment having been signed therein. In this regard we note written reasons filed by the trial judge under date of September 21, 1966, wherein he expresses agreement with the jury verdicts on the question of liability. On this basis he states judgment will be signed in favor of said plaintiff in the sum of $1,072.62 against Younger, DeSoto and Continental but that judgment will be rendered rejecting said plaintiff’s demands against Gordon’s, Smith and Insurance Company. We note in the record a stipulation between counsel for Red Ball and counsel for defendants in said suit to the effect that the original judgment was lost either before or after signing by the trial court. The specification further recites the acceptance by all counsel of an attached unsigned carbon copy of judgment “the same as though read, rendered and signed in open Court on the 21st day of September, 1966.” Presumably on the strength of this stipulation the Court is urged to recognize an unsigned carbon copy in lieu of a judgment which may or may not have been formally signed and rendered by the trial court. This, the court cannot do.
It is settled law that no right of appeal exists from a final judgment until it is signed by the trial court. Succession of Savoie, 195 La. 433, 196 So. 923. Parties may not stipulate their acquiescence in a judgment never signed by the trial court in order to confer appellate jurisdiction. Until a judgment is signed, it is inchoate and appeal therefrom will not lie. Succession of Savoie, supra. Consequently, litigants cannot by specification or agreement obviate the necessity of the presence in the record of a signed judgment as an indispensable prerequisite to appeal. It follows the appeal of Red Ball must be dismissed at said appellant’s cost.
The appeals taken herein by Hernandez and DeSoto from the judgment rejecting and dismissing their claims for personal injuries as well as those by Younger and Continental from the judgment rendered against them in favor of Gordon’s and Insurance Company present identical factual questions. In essence appellants contend the accident occurred solely because of the alleged negligence of Smith in (1) driving at an excessive speed; (2) failing to maintain a proper lookout; (3) neglecting to keep his vehicle under proper control; (4) failure to take evasive measures to avoid a collision after he realized or should have realized the Younger vehicle had preempted the inspection; (5) violation of the provision of LSA-R.S. 32:234 which requires a motorist to proceed with caution through an intersection controlled by a yellow blinking signal, and (6) alternatively, failure to exercise the last clear chance to avoid the accident.
As previously noted, Smith, driver of the Gordon’s truck was killed in the accident consequently his version of the circumstances attending the incident is unavailable.
*785 DeSoto and his fellow employee, Hernandez, gave substantially similar accounts of the events culminating in the initial accident. In essence DeSoto testified that after leaving his home terminal in Baton Rouge a coffee stop was made for approximately 10 minutes following which he proceeded toward New Orleans. While driving southerly along Airline Highway and some distance before reaching the intersection of Highland Road, he and Hernandez detected a hissing sound indicative of air leaking from a tire. He pulled the truck over to his right and stopped a short distance north of the intersection in the right turn lane used by southbound motorists to turn west off Airline Highway onto Highland Road. Upon alighting from the truck, he and Hernandez inspected the right front tire and discovered it was leaking air. DeSoto and Hernandez reentered the truck whereupon DeSoto decided to make a “U” turn at the intersection and proceed northerly along Airline Highway a distance of about one mile to an all night service station from which he could telephone his terminal and request the dispatch of someone to repair the tire. Before moving his truck from its parked position in the aforesaid right turn lane, he looked in both directions along Airline Highway and seeing no traffic approaching from either way, pulled slowly onto the highway and across the two southbound lanes. He did not stop in the neutral ground (which the record shows to be approximately 40 feet in width) but drove slowly through the opening looking again in both directions and not observing any vehicles approaching from his right or from the south proceeding northerly. He continued his slow but uninterrupted left turn across the northbound lanes until the front of his tractor reached a point estimated at from 7 to 10 feet onto the east shoulder of Airline Highway at which spot he was forced to stop because of his encountering a utility pole from which the blinker light controlling the intersection was suspended. He stopped approximately two feet short of the utility pole, backed up an estimated three to five feet and as he again started forward, his truck was struck. At the time he started backing up, he observed no oncoming traffic. After completing his backing maneuver, he was in such position he could not see to his right. At no time prior to the impact was he aware of the presence of the oncoming Gordon’s truck notwithstanding his admission his visibility extended approximately eight-tenths of a mile to the south or in the direction from which Smith’s vehicle was approaching. He further conceded that in negotiating the turn all forward motion of the truck was accomplished in first or low gear which is a “power gear” and not a “speed gear.”
Hernandez testified that as DeSoto negotiated the two s.outhbound lanes after checking the tire, he, Hernandez, did not observe any traffic approaching from the south. As DeSoto entered the inside northbound lane, however, Hernandez noted the lights of a northbound truck which he then estimated to be one-half mile distant. He did not inform DeSoto of the approach of this vehicle as he felt it was so far distant the intended “U” turn could be executed without incident. (By stipulation of record, it appears the distance from the intersection to the point where Hernandez reputedly saw the Gordon’s truck approaching is fixed at 1460 feet.) According to Hernandez, DeSoto drove across the two northbound lanes, stopped with the front of the truck on the shoulder of the highway, backed up a distance of four or five feet and after pulling forward approximately 30 feet, the impact occurred. Hernandez did not see the utility pole which allegedly forced DeSoto to stop. He stated he thought DeSoto stopped because the shoulder was not sufficiently wide to complete the turn without going into the adjacent ditch. He further stated that when DeSoto commenced backing up, he, Hernandez, did not again look for the approaching vehicle as he felt there was ample time to complete the turn.
It is undisputed the impact occurred in the left or inside northbound lane. The *786 record also reveals skid marks left by application of the brakes on the Gordon’s truck prior to the point of impact. It is not entirely clear from the testimony just where the brake marks made by Gordon’s vehicle commenced nor is their precise length shown. As near as we can determine from the evidence, these tire marks began just south of the south parallel of Highland Road and proceeded into the intersection veering from the right into the left northbound lane terminating at the point of impact. Additionally, the record fails to disclose the precise point north of the intersection at which the vehicles collided.
By using stopping charts analyzed by expert witnesses, appellants seek to establish that the accident was caused solely by Smith’s negligence in proceeding into the intersection at an excessive rate of speed notwithstanding the presence of the caution light which required the exercise of care. It is further argued that the well lighted Younger truck was or should have been clearly visible to Smith as he proceeded northerly along the highway. In this regard it is contended DeSoto preempted the intersection when Smith was a safe distance away thus imposing upon Smith the duty of yielding notwithstanding Smith otherwise enjoyed the right of way. Alternatively, it is contended that as the Younger truck was in a position of peril created by the emergency which resulted when its turn ws interrupted by the unexpected presence of the utility pole, Smith possessed and failed to take advantage of the last clear chance to avoid the accident.
Appellees, however, maintain the accident occurred when DeSoto, confronted with the emergency presented by a leaking tire decided to make a quick “U” turn to reverse his direction and proceed to a point where he might obtain aid. In effect appellees argue that DeSoto, in anxiety produced by the emergency occasioned by the leaking tire, misjudged the speed and proximity of the Gordon’s vehicle and attempted his turn when Smith was so close the latter could not avoid a collision despite the application of his brakes and his attempt to veer left.
It is well established law that plaintiff must establish all elements of his cause by a preponderance of evidence. Bryant v. Johnson, La.App., 140 So.2d 758.
In legal contemplation preponderance of the evidence does not merely mean the production of a greater number of witnesses by plaintiff than by defendant but rather the production of such credible evidence which as a whole shows the fact sought to be proved is more probable than not. Gauthier v. Liberty Mutual Insurance Company, La.App., 179 So.2d 437; Slocum v. American Casualty Insurance Company, La.App., 189 So.2d 299.
Upon review of the entire record we regard the credibility of appellants’ witnesses, DeSoto and Hernandez, with some doubt because of certain inconsistences therein as well as conflicts with some of the physical evidence.
Initially we note Hernandez’ testimony to a passing motorist, and the investigating officer at the scene of the accident and to an adjuster later, to the effect he was asleep at the time of the accident and knew nothing of the attending circumstances. He explained this contradiction by stating he did not wish to make any statement to anyone regarding the events preceding the collision until such time as he consulted his employer. Notwithstanding this elucidation of his inconsistent statements he admitted a further contradiction by acknowledging having made such a statement to the adjuster following an interview with his employer. Likewise, we note Hernandez’ testimony to the investigating officer that De-Soto made a “quick left turn.” We concede, however, his attempt to minimize the implication of such a statement by adding that at the time DeSoto made the quick left turn, the oncoming truck was a considerable distance away.
*787 Equally worthy of note is certain evidence disclosed by the discs taken from a recorder device with which the Younger truck was equipped. The function of the device was to keep the owner informed of the truck’s progress at all times while en route. Admittedly, the contraption records all stops made by the vehicle as well as its speed and the revolutions per minute turned while its engine was in operation.
The speed side of the record (on which stops are also indicated) clearly shows the approximate ten minute coffee stop testified to by DeSoto and Hernandez approximately ten minutes preceding the accident. It also clearly reveals a stop of about two minutes duration approximately one-half to one minute preceding the time it ceased recording at the moment of impact. Unquestionably this latter indicated stop was the one made to inspect the leaking tire. No subsequent stop is indicated on the disc notwithstanding the testimony of both DeSoto and Hernandez that the vehicle was compelled to stop and back up immediately before the impact. The recorded data further indicates that after making the stop to check the tires, the vehicle progressed slowly to a speed of about eighteen miles per hour at which point the recording abruptly ended, undoubtedly due to the impact of the collision.
Counsel for appellants maintains the speed disc discloses that, after stopping for the tire inspection, the Younger truck progressed to a speed of approximately 10 miles per hour following which due to impact, the recording needle instantly jumped to indicate a maximum speed of 18 miles following which the recording ended abruptly. In substantiation of this theory, counsel points to the RPM chart which shows the engine of the Younger truck was turning 2500 RPM at impact, which circumstance counsel interpolates to equal a speed of 10 miles per hour thus negating defendant’s contention the accident occurred because of DeSoto’s making an abrupt turn across the path of the oncoming Gordon’s vehicle.-
We do not accept the explanation tendered by counsel for appellants. First, it ignores the absence from the recorder disc of any evidence of the stop reputedly made by DeSoto upon encountering the utility pole. In this regard the data contained on the disc contradicts the testimony of both DeSoto and Hernandez that such a stop was made. Secondly, the number of RPM does not necessarily of itself constitute a true criteria of speed. An additional essential element which must be considered is the gear in which the truck was being operated at the time its engine was turning a given number of RPM. By De-Soto’s own admission, first gear, in which he proceeded after making the tire inspection! stop, was a power gear and not a speed gear. It is common knowledge that gear ratio affects the amount of speed that can be produced by a motor vehicle engine turning at a given number of RPM. Unquestionably to attain maximum speed in first gear, the engine of the vehicle would have to be running more RPM than would be required to attain a greater speed in a higher gear. It does not follow, therefore, as suggested by counsel for appellants that evidence of the Younger truck’s motor turning 2500 RPM at the moment of impact is necessarily indicative of a simultaneous speed of 10 miles per hour.
Insofar as we are able to reconstruct the accident from the evidence of record, we are inclined to the view the accident resulted solely from DeSoto’s negligence in attempting a “U” turn in the path of the oncoming Gordon’s vehicle when the latter was so near the intersection as to make such maneuver patently dangerous. On the basis of the evidence hereinabove discussed, we are impelled to the further conclusion that DeSoto did not again stop his vehicle after checking his tires some two minutes preceding the impact. In this regard counsel for appellants points to the testimony of Jewel Smith, Jr., operator of the tow car which hauled away Younger’s vehicle, to the effect he noted creosote on the front bumper and fender of the Younger truck *788 indicating said vehicle had come into contact with a utility pole. We note first that neither DeSoto nor Hernandez contend their vehicle struck the pole — in fact, De-Soto stoutly denied having come in contact with the pole and insisted he stopped some two feet short thereof. We further point out that Smith did not testify that the pole in question had been struck by the Younger truck — he merely stated he found evidence of creosote as indicated but made no effort to indicate how or why it appeared on the Younger truck. The record is barren of evidence revealing the manner in which the creosote in question came in contact with the bumper and fender of the Younger truck. Considering this factor and DeSoto’s positive testimony he did not strike the pole in question, we conclude the creosote was on the vehicle for some time prior to the accident.
We find as a fact that DeSoto made a sudden or quick uninterrupted turn and that he did not stop for the utility pole as he testified. Having so concluded, it matters not whether he was proceeding at a speed of 10 or 18 miles per hour. The significant factor, in our judgment, is that he attempted such maneuver at a time when Smith was so near the intersection as to make the intended turn patently dangerous. That Smith reacted to the emergency thus created is amply demonstrated by the application of his brakes and the swerving of his vehicle in a futile effort to avoid the imminent collision.
On the basis of the testimony offered by appellants we cannot conclude Smith was negligent and that his negligence alone was the sole proximate cause of the accident. On the contrary we conclude, as obviously did the jury also, Smith was free of negligence.
Nor do we find any merit in the suggestions of counsel for appellants that Smith was negligent in driving at such speed he could not stop within the range of his headlights and in proceeding recklessly into the intersection notwithstanding the care he should have exercised in obedience to the caution light. In so arguing counsel copiously cites cases in which the rules regarding preemption of intersections, the laws governing the care required of a motorist passing through a caution light and the duty of a motorist to see what should be seen and maintain his vehicle under control are set forth, discussed and applied. We have read the many cited cases and find that while each said authority correctly states the law and properly resolves the issues therein presented, none are factually apposite to or decisive of the case at bar. To apply the quoted authorities we would of necessity have to accept appellants’ version of the accident. Obviously, the jury rejected the account of the accident tendered by DeSoto and Hernandez with which determination the trial judge concurred. Not only do we detect no error in such conclusions but for the reasons hereinabove set forth, we concur therein.
To permit appellants’ recovery on the doctrine of last clear chance would, we believe, also be contrary to the evidence herein. To so hold, we must accept appellants’ contention that DeSoto stopped in the two northbound lanes with his vehicle completely blocking the roadway and that Smith simply came along and without exercising any care or caution crashed into Younger’s well lighted truck. This version of the accident is inconsistent with the facts as we find them.
Appellant Hernandez stenuously argues that being a guest passenger of his co-worker, DeSoto, he is not bound by DeSoto’s negligence, if any, and therefore should recover against Gordon’s and Insurance Company on the ground that Smith was either solely responsible for the accident or a co-tort feasor with DeSoto. Our finding that Smith was totally free of any negligence whatsoever contributing to the ac *789 cident disposes of the necessity of considering this issue.
Appellants raise a final issue, namely, that the trial court committed reversible error in admitting over counsel’s objection evidence establishing imbecility of the minor, Kenneth Smith. It is argued that such evidence (offered by Mrs. Smith and two medical experts) prejudiced the jury in favor of Mrs. Smith and said minor as evidenced by the verdicts rendered in their favor notwithstanding rejection of the demand of the older minor, Gregory Smith. In this connection, it is claimed admission of such evidence evoked the sympathy of the jury in favor of Mrs. Smith and her retarded minor son to the prejudice of appellants.
The evidence alluded to was properly admissible with regard to said retarded minor’s claim for loss of support resulting from the death of his father. The mental as well as physical condition of a dependent is a matter which a judge or jury may take into account in assessing damages for loss of support.
We find nothing in the record corroborative of counsel’s charge that the admission of such evidence was prejudicial to appellants’ cause.
Accordingly, the appeal in the instant case, Red Ball Motor Freight, Inc. v. Younger Brothers, Inc., et al., No. 7142 on the docket of this court, by defendants, Younger Brothers, Inc., James DeSoto and Continental Casualty Company, is dismissed at said appellants’ cost.
In the consolidated cases judgment will be rendered separately affirming the judgments of the trial court at appellants’ cost.
Appeal dismissed.